# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| **GREATGIGZ SOLUTIONS, LLC,** <br><br> Plaintiff, <br><br> v. <br><br> **ANGIE'S LIST, INC.,** <br><br> Defendant. | Civil Action No: 6:20-cv-00633-ADA <br><br> PATENT CASE <br><br> JURY TRIAL DEMANDED |

## DEFENDANT'S RENEWED MOTION TO DISMISS FOR IMPROPER VENUE

FISH & RICHARDSON P.C.
Neil J. McNabnay
mcnabnay@fr.com
Texas Bar No. 24002583
Ricardo J. Bonilla
rbonilla@fr.com
Texas Bar No. 24082704
Lance Wyatt
wyatt@fr.com
Texas Bar No. 24093397

1717 Main Street, Suite 5000
Dallas, Texas 75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile)

***Attorneys for Defendant***
***Angie's List, Inc.***

# TABLE OF CONTENTS

I. STATEMENT OF ISSUES ................................................................................................ 1

II. FACTS .............................................................................................................................. 2

III. LEGAL STANDARD AND APPLICABLE LAW ............................................................ 4

IV. ARGUMENT .................................................................................................................... 5

    A. Angie's List Does Not "Reside" in the Western District of Texas .............................. 5

    B. Angie's List Has No "Physical Place" or "Regular and Established Place of Business" in the Western District of Texas ................................................................. 5

    C. Angie's List and Preeminent Contracting Are Not a Joint Enterprise. .................... 8

V. CONCLUSION ................................................................................................................ 10

# **TABLE OF AUTHORITIES**

**Cases**                                     **Page(s)**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................................... 8

*In re BigCommerce, Inc.*,
  890 F.3d 978 (Fed. Cir. 2018) ............................................................................................... 4

*Bramante v. McClain, Sr.*,
  Case No. SA-06-CA-0010, 2007 WL 4555943 (W.D. Tex. Dec. 18, 2007) ............................ 8

*In re Cray Inc.*,
  871 F.3d 1355 (Fed. Cir. 2017) ............................................................................... 4, 6, 8, 10

*In re Google LLC*,
  949 F.3d 1338 (Fed. Cir. 2020) .......................................................................................... 7, 8

*L & H Concepts LLC v. Schmidt*,
  No. 6:07 CV 65, 2007 WL 4165259 (E.D. Tex. Nov. 20, 2007) ............................................ 4

*Magnacoustics, Inc. v. Resonance Tech. Co.*,
  132 F.3d 49, 1997 WL 592863 (Fed. Cir. Sept. 25, 1997) ..................................................... 9

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
  137 S. Ct. 1514 (2017) ........................................................................................................... 4

*Wet Sounds, Inc. v. PowerBass USA, Inc.*,
  C.A. No. H-17-3258, 2018 WL 1811354 (S.D. Tex. Apr. 17, 2018) ..................................... 9

*In re ZTE (USA) Inc.*,
  890 F.3d 1008 (Fed. Cir. 2018) ............................................................................................. 4

**Statutes**

28 U.S.C. 1406(a) ........................................................................................................................ 1

28 U.S.C. § 1400(b) .............................................................................................................. *passim*

28 U.S.C. § 1406(a) .................................................................................................................. 5, 8

America Invents Act, 35 U.S.C. § 299 ....................................................................................... 10

**Other Authorities**

Fed. R. Civ. P. 15(a)(1) ................................................................................................................ 3

Fed. R. Civ. P. 12(b)(3) ....................................................................................................... 1, 5, 8

Venue is not proper in this District, and GGS's "joint enterprise" argument regarding venue is supported by neither fact nor law. No court has ever held that venue is proper as to a defendant with no physical presence in the district because that defendant is involved in a "joint enterprise" with another defendant that is physically in the district. Nor could it. Moreover, Angie's List is not involved in any joint enterprise with Preeminent Contracting such that the two should be treated as one and the same.

Under *TC Heartland LLC v. Kraft Foods Group Brands LLC*, venue in a patent case is only proper where: (1) the defendant resides, or (2) in a district in which the defendant has a regular and established place of business and has committed acts of infringement. Defendant Angie's List, Inc. does not reside and has never resided in this District and has no physical presence or regular and established place of business in this District. Accordingly, pursuant to Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. 1406(a), Angie's List respectfully requests that this Court dismiss all claims in Plaintiff GreatGigz Solutions LLC's ("GGS" or "GreatGigz") First Amended Complaint for improper venue.

**I.      STATEMENT OF ISSUES**

Angie's List identifies the following issues to be decided by this dispositive motion to dismiss under Rule 12(b)(3):

1.      Venue is proper in a patent case only where the defendant resides or has a regular and established place of business and has committed an act of infringement. Angie's List does not reside in Texas, it has no physical presence in this District, and its relationship with Preeminent Contracting is not a joint enterprise. Should the Court therefore dismiss the case against Angie's List for lack of proper venue?

## II.     FACTS

Although Angie's List's website is accessible across the United States, Angie's List neither resides nor has a place of business in the Western District of Texas. (Pasricha Decl. at ¶ 4.) Angie's List does not currently maintain and has never maintained any real or personal property—including storage, data, distribution, or manufacturing facilities—or employed any employees at a place of business in the Western District of Texas. (*Id*. at ¶¶ 5-8.) Angie's List does not own, operate, or control any data centers in this District. (*Id*. at ¶ 6.)

On July 14, 2020, GGS filed its Original Complaint against Angie's List, alleging infringement of U.S. Patent Nos. 6,662,194 and 7,490,086 by Angie's List's website, ancillary sites, and mobile applications (the "Accused Instrumentalities"). (Dkt. No. 1 at ¶¶ 36, 39–51, 60–66.) The Original Complaint acknowledged that Angie's List is a Delaware corporation with a principal place of business in the Southern District of Indiana, but, nevertheless, asserted that venue is proper in the Western District of Texas. (*Id.* at ¶ 2.) GGS's Original Complaint asserted that venue is proper in the Western District of Texas because the Accused Instrumentalities are "hosted on the Akamai platform." (*Id.* at ¶ 6.) GGS cited to servers owned, operated, and maintained by Akamai Technologies, Inc., not Angie's List.

As demonstrated by the Hosting Checker screenshot in paragraph 5 of GGS's Original Complaint, the Akamai server hosting Angie's List's website is located in New York, not Texas. (*Id.* at ¶ 5.) GGS further cited (and highlighted) an Akamai article published May 6, 2019, describing "Akamai's aggregate Texas area data center operations." (*Id.*) The article makes clear, however, that Akamai's aggregate Texas area data center is not located in the Western District of Texas, but rather, in Dallas—the Northern District of Texas. (*See id.* ("Akamai Technologies To Power ***Dallas*** Data Center With Sustainable Energy" (emphasis added)).)

2

On September 22, 2020, Angie's List filed a Motion to Dismiss for Improper Venue. (Dkt. No. 9.) GGS served discovery requests, including interrogatories and requests for production, to which Angie's List served objections and responses on October 31, 2020. Angie's List's responses to GGS's interrogatories demonstrated that: (1) Angie's List does not have any employees that live in the Western District of Texas; (2) Angie's List does not own, supervise, control, or lease any servers, computers, electronic storage facilities, physical storage facilities, and/or warehouses located in the Western District of Texas; and (3) Angie's List does not have any contractual relationships with any individuals or entities located in the Western District of Texas to provide goods and/or services to Angie's List, on Angie's List behalf, or for Angie's List's economic benefit. Additionally, Angie's List did not have any documents responsive to GGS's requests for production.

After receiving these responses, instead of substantively responding to Angie's List's Motion to Dismiss, GreatGigz filed its First Amended Complaint ("FAC").[1] In the FAC, GreatGigz added a new defendant, Preeminent Contracting, LLC. Aside from alleging that Angie's List and Preeminent Contracting have "jointly and severally entered into and formed a joint enterprise for the purpose of exploiting and profiting from the sale and use of the Accused Instrumentalities," GGS relies on the same venue allegations as presented in the Original Complaint. (*See* FAC ¶¶ 6, 7, 15, 69, 92.) Preeminent Contracting is indeed located in the Western District of Texas, but it is merely one of thousands of users of Angie's List's services. There is no agreement, express or implied, with Angie's List relating to a joint enterprise with Preeminent

---

[1] GreatGigz's FAC is procedurally improper. GGS filed its FAC without leave of the Court pursuant to Fed. R. Civ. P. 15(a)(1). Rule 15(a)(1), however, provides that "[a] party may amend its pleading once as a matter of course within 21 days after serving it." Angie's List's Original Complaint was served on July 17, 2020. GreatGigz filed its FAC on November 13, 2020, three months after the deadline to amend its Complaint as a matter of course (August 7, 2020).

Contracting. The sole "agreement" identified by GGS in its FAC, Angie's List's Lead Feed Service Provider Agreement, is nothing more than a set of terms and conditions that must be accepted by service providers intending to use Angie's List's services. (*Id*. ¶ 11.) In short, Preeminent Contracting promotes its services on Angie's List's website—that is the full extent of the relationship between these two entities.

**III.   LEGAL STANDARD AND APPLICABLE LAW**

In a patent case, venue is proper only "[1] in the judicial district where the defendant resides, or [2] where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b); *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514 (2017). When applied to domestic corporations, the first prong of section §1400(b) generally "refers [] to the State of incorporation." *TC Heartland* at 1521. In a multi-district state such as Texas, however, only "the judicial district where the principal place of business is located" is the district in which it "resides" for venue purposes. *In re BigCommerce, Inc.*, 890 F.3d 978, 982 (Fed. Cir. 2018). The second prong of Section 1400(b) requires that "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017). All three factors of the second prong must be met in order for venue to be proper in a specific district. *Id*.

Once a defendant raises a 12(b)(3) motion to dismiss for improper venue, the burden of proving whether venue is appropriate shifts to plaintiff. *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1013 (Fed. Cir. 2018); *L & H Concepts LLC v. Schmidt*, No. 6:07 CV 65, 2007 WL 4165259, at *1 (E.D. Tex. Nov. 20, 2007) (citing *Laserdynamics Inc. v. Acer Am. Corp.*, 209 F.R.D. 388, 390 (S.D. Tex. 2002)). If venue is improper under Section 1400(b), the Court "shall dismiss, or if it be in the

interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

**IV.    ARGUMENT**

Venue is improper for Angie's List in this District under both prongs of § 1400(b). GGS's assertions regarding venue are wrong. Angie's List does not "reside" in the Western District of Texas under the first prong of § 1400(b) because Angie's List does not have, and never has had, **any** place of business in the District. (Pasricha Decl. at ¶¶ 3-5; Ex. A.) Angie's List has no "physical place" and no "regular and established place of business" in the Western District of Texas under the second prong of § 1400(b). (*Id.* at ¶ 5-6.) Angie's List therefore respectfully requests that the Court grant its motion and dismiss this case. FED. R. CIV. P. 12(b)(3); 28 U.S.C. § 1406(a).

**A.    Angie's List Does Not "Reside" in the Western District of Texas**

Angie's List does not reside in the Western District of Texas for the purposes of the first prong of §1400(b). Angie's List is incorporated in Delaware and maintains a place of business in Indianapolis, Indiana. (Pasricha Decl. at ¶¶ 3-4.) Indianapolis, Indiana is located in the Southern District of Indiana. As a result, for purposes of §1400(b), Angie's List resides only in either the Southern District of Indiana or the District of Delaware. Angie's List's residency under § 1400(b) is uncontroverted in GGS's FAC.

**B.    Angie's List Has No "Physical Place" or "Regular and Established Place of Business" in the Western District of Texas**

Angie's List has no "physical place" and no "regular and established place of business" in the Western District of Texas for the purposes of the second prong of §1400(b). Angie's List has no physical locations in Texas. (Pasricha Decl. at ¶¶ 4-5.) Angie's List has no property, real or otherwise, in the Western District of Texas. (*Id*. at ¶ 5.) Angie's List has no bank accounts or

telephone listings in the Western District of Texas. (*Id*. at ¶ 7.) Angie's List does not own or lease any office, warehouse, datacenter, or other real estate within the Western District of Texas. (*Id*. at ¶¶ 5-6.) And Angie's List has no employees or contractors in the Western District of Texas working at an Angie's List place of business (there is none). (*Id*. at ¶ 8.) In short, Angie's List has no physical presence whatsoever in the Western District of Texas.

The Federal Circuit in *In re Cray Inc*. determined that for a defendant to have "a 'regular and established place of business' in a certain district within the meaning of 1400(b)" three conditions must be true: "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." 871 F.3d 1355, 1360 (Fed. Cir. 2017). Importantly, "[i]f any statutory requirement is not satisfied, venue is improper under §1400(b)." *Id*. None of the three conditions are present in the instant case.

For the first condition, "physical place," the Federal Circuit held that "there must be a physical, geographical location in the district from which the business of the defendant is carried out." *Id.* at 1362. As detailed above, Angie's List has no physical presence in the Western District of Texas. (Pasricha Decl. at ¶¶ 3-6.) Although the FAC references Angie's List's use of the Akamai cloud service, this fact is of no consequence. GGS's allegations of a physical place are limited to a datacenter not owned or operated by Angie's List, which is also located outside of this District. (FAC, ¶ 15.)

For the second condition, "regular and established," the Federal Circuit explained that a business may be regular if it "operates in a steady, uniform, orderly and methodical" manner. *In re Cray*, 871 F.3d 1355, 1362 (internal citation omitted). The Federal Circuit further explained that the place of business is "not transient" and "must for a meaningful time period be stable, established." *Id.* at 1363. As detailed above, Angie's List has no place of business in the Western

District of Texas, temporary or otherwise. (Pasricha Decl. at ¶¶ 3-6.) There is no physical presence of an employee or other agent of the defendant conducting Angie's List's business at any alleged "place of business," as required by the Federal Circuit. *See In re Google LLC*, 949 F.3d 1338, 1345 (Fed. Cir. 2020).

GGS's FAC alleges that Angie's List has a "regular and established place of business" in the Western District of Texas because it hosts its website on Akamai's cloud service. (FAC, ¶ 15–16 (alleging that the "Accused Instrumentalities are hosted on the Akamai platform," and are "under the joint direction and control of Akamai and Angie's List, such that it is a 'regular and established place of business' of Angie's List").) The server hosting Angie's List's website, as identified by GGS, is located in New York, and the Akamai servers located in Texas are located in the Northern District of Texas, not in the Western District. (*Id*.)

Even if the Akamai servers were located in the Western District of Texas (they are not), the servers would still not provide proper venue for Angie's List. In *Google*, the Federal Circuit held that Google's renting of server space in two ISPs' data centers within a district was insufficient to be a "regular and established place of business" of Google within the district for purposes of venue. 949 F.3d at 1347. The Federal Circuit applied agency relationship factors to inquire whether the ISPs acted as an agent of Google. *Id.* at 1345–47. The Court looked at the contracts between Google and the ISPs and held that maintaining servers is not the same as acting as an agent, explaining that the ISPs conduct "is permitted 'only with specific and direct step-by-step instructions from Google.'" *Id.* at 1346. "Maintaining equipment is meaningfully different from—as only ancillary to—the actual producing, storing, and furnishing to customers of what the business offers." *Id*.

Here, further removed from *Google*, Angie's List does not rent any space in the District for any of its servers. *See Google* at 1340 ("Google had entered into contracts with two ISPs to host GGC servers owned by Google in the Eastern District of Texas: Cable One Inc. ('Cable One') and Suddenlink Communications ('Suddenlink')."). Instead, Angie's List is using a cloud provider (Akamai), that, according to GGS's FAC, has a data center in Dallas—the Northern District of Texas—but not this District. (FAC, ¶ 15.)

For the third and final condition, the "regular and established place of business" must be "the place of the defendant, not solely a place of the defendant's employee." 871 F.3d 1355, 1363. As detailed above, Angie's List has no place of business for an employee to work in the Western District of Texas. (*See* Pasricha Decl. at ¶¶ 3-6.) Accordingly, venue is improper for Angie's List in this District under both prongs of § 1400(b). Angie's List therefore respectfully requests that the Court grant its motion and dismiss this case. FED. R. CIV. P. 12(b)(3); 28 U.S.C. § 1406(a).

### C. Angie's List and Preeminent Contracting Are Not a Joint Enterprise.

GGS relies on an alleged "joint enterprise" between Angie's List and Preeminent Contracting in a last-ditch attempt to maintain venue in the Western District of Texas.

GGS's allegations, supported solely by mere conclusory statements, amount to nothing more than threadbare recitals of the elements of a joint enterprise claim.[2] The Court is not required to accept such allegations as true. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable

---

[2] "The elements which are essential to a joint enterprise are commonly stated to be four: (1) an agreement, express or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose, among the members; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control." *Bramante v. McClain, Sr.*, Case No. SA-06-CA-0010, 2007 WL 4555943, *5 (W.D. Tex. Dec. 18, 2007) (quoting *Walker v. Messerschmitt Bolkow Blohm GmBH*, 844 F.2d 237, 240 (5th Cir. 1988)).

to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). GGS has not alleged any **facts** supporting any of the four elements required to maintain a joint enterprise theory. Nor could it. Preeminent Contracting is one of thousands of service providers that advertises on Angie's List's website. In other words, Preeminent Contracting is merely a user of Angie's List's services. Preeminent Contracting does not have any agreement, express or implied, with Angie's List relating to a joint enterprise.

Preeminent Contracting does not have an equal right to a voice in the direction of any purported enterprise. Indeed, the sole "agreement" identified by GGS in its FAC, Angie's List's Lead Feed Service Provider Agreement ("Agreement"), is nothing more than a set of terms and conditions that must be accepted by service providers intending to **use** Angie's List's services. GGS grossly mischaracterizes Section 5 of the Agreement as "describing joint participation and control over the use of the accused instrumentalities for the benefit of both Defendants." (FAC ¶ 11.) To the contrary, Section 5 merely describes how Angie's List's service provider program works: "Here is a description about how the Program will work." *See* https://content.angieslist.com/angieslist/LeadsTermsAndConditions.pdf. Nothing in Section 5, or the rest of the Agreement, indicates that Preeminent Contracting has any control over Angie's List's Program. It does not. Accordingly, GGS's joint enterprise allegations represent nothing more than an improper, last-ditch attempt to maintain venue in the Western District of Texas.

Moreover, there is no law supporting a joint enterprise theory to establish venue as to Angie's List. *See, e.g.*, *Magnacoustics, Inc. v. Resonance Tech. Co.*, 132 F.3d 49, 1997 WL 592863, *1 (Fed. Cir. Sept. 25, 1997) ("[A]s firmly established by judicial decisions, in an action involving multiple defendants venue and jurisdiction requirements must be met as to each defendant."); *Wet Sounds, Inc. v. PowerBass USA, Inc.*, C.A. No. H-17-3258, 2018 WL 1811354,

*3 (S.D. Tex. Apr. 17, 2018) ("Wet Sounds argues that venue is proper in this district because of the defendants' jointly infringing acts, citing the America Invents Act, 35 U.S.C. § 299. The problem is that venue must be proper as to each defendant, and it is not proper as to PowerBass."). As discussed in detail above, GGS has not and cannot identify a physical place of Angie's List in the Western District of Texas, and thus, venue is not proper in the Western District of Texas as to Angie's List. *See In re Cray*, 871 F.3d 1355, 1360 (Section 1400(b) requires "a physical place in the district").

## V.  CONCLUSION

For the reasons set forth, Angie's List respectfully requests that this Court grant its motion to dismiss for improper venue.

Dated: December 21, 2020

Respectfully submitted,

FISH & RICHARDSON P.C.

By: */s/ Lance Wyatt*
Neil J. McNabnay
macnabnay@fr.com
Texas Bar No. 24002583
Ricardo J. Bonilla
rbonilla@fr.com
Texas Bar No. 24082704
Lance Wyatt
wyatt@fr.com
Texas Bar No. 24093397

1717 Main Street, Suite 5000
Dallas, Texas 75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile)

***Attorneys for Defendant***
***Angie's List, Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record, who are deemed to have consented to electronic service are being served on this 21st day of December, 2020, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(b)(1).

*/s/ Lance Wyatt*
Lance Wyatt